J-A05028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| OSCAR CHRISTOPHER JACKSON | : | |
| | : | |
| Appellant | : | No. 1042 WDA 2024 |

Appeal from the PCRA Order Entered August 8, 2024
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000821-2020

BEFORE: MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E. [*]

MEMORANDUM BY KING, J.: **FILED: September 8, 2025**

Appellant, Oscar Christopher Jackson, appeals from the order entered in the Fayette County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with possession of a controlled substance, possession with intent to deliver ("PWID"), possession of drug paraphernalia, and possession of a firearm prohibited. The matter proceeded to a jury trial that commenced on December 6, 2021.

At trial, Pennsylvania State Trooper, Kristopher Williams, testified that on December 21, 2019, he and several other state troopers responded to a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

Super 8 Hotel due to a report that two males with firearms were outside room 309. When he arrived on location, Trooper Williams knocked on the door to room 309 and Appellant opened the door. While conducting a protective sweep of the hotel room, the troopers saw a glass smoking device in plain sight on the nightstand between the two beds. No other individuals were found in the room. Appellant was arrested and searched. From Appellant's person, Trooper Williams recovered a plastic bag containing a substance that was suspected to be crystal methamphetamine.

Trooper Williams took Appellant to the station and interviewed him. Appellant told Trooper Williams that there were four bricks of heroin, a firearm, and cash inside the hotel room. Appellant reported that these items belonged to an individual named Matthew Meholic. Corporal Justin Duval conducted a search of Appellant's person while he was at the station and recovered packets of suspected heroin and $1,335.00 in cash from inside Appellant's underwear. After obtaining a search warrant, Trooper Williams searched room 309 and recovered 180 white stamp bags labeled "Power" containing a substance suspected to be heroin, a bag containing a substance suspected to be crystal methamphetamine, a firearm, and $450.00 in cash. Trooper Williams further collected various items of drug paraphernalia from the hotel room. Trooper Williams testified as follows in relation to the collection of these items:

> [Prosecutor:]        So starting with Exhibit 4, what are we looking at there?

[Trooper Williams:] Okay. So what you are looking at [are] empty stamped bags labeled as Power. There were 31 of them. A yellow and black snorting straw and then a green and black lighter.

[Prosecutor:] Okay. So what was the significance of you collecting those three items, classes of items?

[Trooper Williams:] The empty stamped bags labeled as Power, they were not filled yet with any heroin but they are indicative to people selling narcotics.

[Prosecutor:] And the other two items?

[Trooper Williams:] The yellow and black snorting straw, that is just for drug use[,] and then the green and black lighter. It was a green and black butane lighter which is indicative to usually for using the glass smoking device that was first found in plain view which is used at the time to usually smoke meth.

(N.T. Trial, 12/6/21, at 32). When asked if he could explain what stamp bags are, Trooper Williams testified that they are glassine bags that are stamped with some type of insignia by a drug dealer so that customers can recognize the product. In describing the stamp bags recovered from the hotel, Trooper Williams testified that stamp bags of that size usually contain heroin.

Trooper Williams further testified that he sent the suspected narcotics to the Pennsylvania Regional Laboratory for testing. The Commonwealth moved to admit the lab report into evidence and the court admitted the lab report without objection from Appellant. Trooper Williams identified the substances tested as the items that were recovered from Appellant's person and the hotel room. Trooper Williams further read the results of the testing for each substance, confirming that they were heroin and methamphetamine.

During Trooper Williams' testimony, the Commonwealth introduced exhibits of the physical evidence gathered from Appellant's person and the hotel room. As Trooper Williams was handling these exhibits, the prosecutor expressed concern about opening the sealed packets of evidence due to fear that they might contain Fentanyl. Specifically, the following exchanges took place:

> [Trooper Williams:] Do you want me to open this one because it has heroin in it.
>
> [Prosecutor:]          Is that the one. Yes.
>
> [Trooper Williams:] There's heroin in here as well.
>
> [Prosecutor:]          Okay. I'm just worrying about Fentanyl, that's all?
>
> [Trooper Williams:] It's sealed.
>
> *          *          *
>
> [Prosecutor:]          And does it remain sealed as we stand here today?
>
> [Trooper Williams:] Yes, ma'am.
>
> [Prosecutor:]          Is there a concern of Fentanyl being on the stamp bags at all?
>
> [Trooper Williams:] None of these do. The stamp bags that were in here were found empty.

(N.T. Trial, 12/6/21, at 26, 32-33). These sealed evidence packets were subsequently opened and published to the jury. When they were shown to the jury, Trooper Williams identified the substances in the packets as heroin and methamphetamine.

- 4 -

Corporal Eric Friend was accepted as an expert in the field of narcotics investigation. Corporal Friend testified in detail about the use of stamp bags in the sale of drugs. Specifically, Corporal Friend explained that stamp bags are commonly used in the drug trade to package drugs for sale and are typically stamped with some sort of identifying marker. He further opined that the stamp bags recovered from Appellant's person and the hotel room were consistent with those that are typically used for the sale of heroin. Corporal Friend further explained why a drug dealer or user might have empty or used stamp bags in their possession. Based on the amount of narcotics and cash recovered from Appellant's person and the hotel room, the location of the hotel, and the presence of a firearm, Corporal Friend opined that Appellant possessed the narcotics for the purpose of distribution.

Appellant testified that an individual named Matthew Meholic rented the hotel room. Appellant was inside the hotel room using methamphetamines and heroin when he saw two men brandishing firearms outside the room. Appellant testified that he called and reported the two men to the police. Appellant denied that he was selling the drugs found in the room and testified that he was merely a drug user. Appellant further denied that he told the Troopers that there were drugs, cash and a firearm in the room. Appellant testified that he did not know those items were present in the room. Nevertheless, Appellant acknowledged that some of the empty stamp bags that were recovered from the room were his because they were left from the

packets of heroin that he used. Appellant further acknowledged that the empty stamp bags were drug paraphernalia.

At the conclusion of the evidence, the jury found Appellant guilty of all charges. On February 28, 2022, the court sentenced Appellant to an aggregate term of 90 to 180 months' incarceration. This Court affirmed Appellant's judgment of sentence on March 10, 2023. *See Commonwealth v. Jackson*, 296 A.3d 596 (Pa.Super. 2023) (unpublished memorandum). Appellant did not file a petition for allowance of appeal to our Supreme Court. On April 2, 2024, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition on May 14, 2024, asserting various claims of ineffective assistance of counsel.

The PCRA court held an evidentiary hearing on July 22, 2024. Appellant testified that after this Court denied his appeal, he wrote a letter to Nicholas Clark, his trial and direct appeal counsel, advising him that he wanted to file a petition for allowance of appeal to our Supreme Court. Appellant could not recall the exact date that he sent the letter but testified that it was within the 30-day window following this Court's denial of his appeal.

Attorney Clark testified that he sent Appellant a letter on March 14, 2023, informing Appellant about this Court's disposition filed on March 10, 2023. The letter further instructed Appellant that if he wished to file a petition for allowance of appeal to our Supreme Court, he must respond to the letter before the 30-day window to appeal expired. Attorney Clark did not receive

a response from Appellant and consequently, did not file a petition for allowance of appeal on Appellant's behalf.

Attorney Clark further testified that he did not object to the prosecutor's comments regarding fentanyl because Appellant was not charged with any offenses in connection with fentanyl and there was no evidence that fentanyl was present in this case. As such, Attorney Clark believed that the prosecutor's concerns about fentanyl highlighted her lack of familiarity with this case. Additionally, Attorney Clark testified that prior to the trial, the Commonwealth filed a notice pursuant to Pa.R.Crim.P. 574, informing Appellant that the Commonwealth intended to introduce the drug analysis lab report at trial by a certification, in lieu of testimony by the person who performed the analysis.[2] Attorney Clark did not respond to the

_____

[2] Rule 574 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part:

> **Rule 574. Forensic Laboratory Report; Certification In Lieu of Expert Testimony**
>
> **(a)** In any trial, the attorney for the Commonwealth may seek to offer into evidence a forensic laboratory report supported by a certification, … in lieu of testimony by the person who performed the analysis or examination that is the subject of the report.
>
> **(b) Notice.**
>
> (1) If the attorney for the Commonwealth intends to offer the forensic laboratory report and accompanying certification as provided in subdivision (a) as evidence at

*(Footnote Continued Next Page)*

trial, the attorney for the Commonwealth shall file and serve … upon the defendant's attorney or, if unrepresented, the defendant a written notice of that fact at the time of the disclosure of the report but no later than 20 days prior to the start of trial.

(2) The notice shall include a statement informing the defendant that, as provided in subdivision (c)(3), if no written demand for testimony by the person who performed the analysis or examination that is the subject of the forensic laboratory report is made within 10 days of the service of the notice, the forensic laboratory report and accompanying certification are admissible in evidence without the person who performed the analysis or examination testifying.

(3) Except as provided in subdivision (c), the laboratory report and accompanying certification are admissible in evidence to the same effect as if the person who performed the analysis or examination had personally testified.

**(c) Demand.**

(1) Within 10 days of service of the notice provided in subdivision (b), the defendant's attorney, or if unrepresented, the defendant may file and serve … upon the attorney for the Commonwealth a written demand for the person who performed the analysis or examination that is the subject of the forensic laboratory report to testify at trial.

(2) If a written demand is filed and served, the forensic laboratory report and accompanying certification are not admissible under subdivision (b)(3) unless the person who performed the analysis or examination testifies.

(3) If no demand for live testimony regarding the forensic laboratory report and accompanying certification is filed and served within the time allowed by this section, the forensic laboratory report and accompanying certification are

*(Footnote Continued Next Page)*

- 8 -

Commonwealth's Rule 574 notice or object to the introduction of the lab report at trial by certification because Appellant's defense strategy was to admit that he was a drug user and deny that he intended to sell the drugs that were recovered. As such, Attorney Clark had no reason to object to the lab report because Appellant was not contesting that the substances recovered were drugs and that Appellant was using those drugs.

Attorney Clark further testified that he did not think that Trooper Williams' testimony consisted of improper expert opinion and merely contained explanation of the items that he recovered from the scene. On cross-examination, Attorney Clark acknowledged that Trooper Willaims testified that the empty stamp bags were indicative of people selling drugs and that the snorting straw and butane lighter are typically used for drug use.

The court denied PCRA relief on August 8, 2024. On August 22, 2024, Appellant filed a timely notice of appeal, and a voluntary concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

> Whether the Fayette County Public Defender's Office was ineffective for failing to object to the prosecutor's statements about the dangers of fentanyl?
>
> Whether the Fayette County Public Defender's Office was ineffective for allowing [Trooper Williams] to testify as an

_____

admissible in evidence without the person who performed the analysis or examination testifying.

Pa.R.Crim.P. 574(a)-(c).

expert witness?

Whether the Fayette County Public Defender's Office was ineffective for allowing [Trooper Williams] to testify as to the findings of the lab report?

Whether the Fayette County Public Defender's Office was ineffective for failing to file a petition for allowance of appeal?

(Appellant's Brief at 3).

In his first three issues combined, Appellant claims that Attorney Clark provided ineffective assistance of counsel at trial. Specifically, Appellant asserts that Attorney Clark failed to object to the prosecutor's improper comments about fentanyl in front of the jury when Appellant was only charged with possessing and attempting to sell heroin and methamphetamine. Appellant argues that Attorney Clark's rationale for failing to object was unreasonable because an objection would have served only to further highlight to the jury the prosecutor's lack of familiarity with the case. Appellant contends that he was prejudiced by the prosecutor's comments about fentanyl because it had the potential to confuse the jury and "implanted in the minds of the jurors the idea that Appellant was possessing and attempting to sell a very dangerous, potentially life-threatening substance." (*Id.* at 13).

Further, Appellant asserts Attorney Clark failed to raise an objection during multiple instances when Trooper Williams provided improper testimony. Appellant claims that Trooper Williams provided expert opinion about the use of the empty stamp bags, snorting straw, and butane lighter

that were recovered from the hotel room even though he was not qualified as an expert witness in the field of narcotics. Appellant contends that he was prejudiced by Attorney Clark's failure to object to this testimony because it linked Appellant directly to the possession and sale of narcotics. Appellant further avers that Attorney Clark unreasonably failed to object when Trooper Williams, who did not write or produce the drug analysis lab report, testified to its findings. Appellant claims that he was prejudiced as a result because he was deprived of the opportunity to confront the lab technician who wrote and produced the report at trial. Appellant argues that Attorney Clark's actions were unreasonable because if "Attorney Clark [had] objected to the introduction of the lab report through the testimony of Trooper Williams, then the lab report may not have been admitted into evidence, which would have made the Commonwealth's task of proving that Appellant possessed and intended to sell heroin and methamphetamine beyond a reasonable doubt significantly more difficult." (Appellant's Brief at 17). Appellant concludes that Attorney Clark provided ineffective assistance of counsel at trial, and this Court should vacate the order denying his PCRA petition. We disagree.

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA

court if the record contains any support for those findings. ***Commonwealth v. Boyd***, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. ***Commonwealth v. Dennis***, 609 Pa. 442, 17 A.3d 297 (2011).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit." ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to

pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44). "With regard to the reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Hanible*, 612 Pa. 183, 205-06, 30 A.3d 426, 439 (2011), *cert. denied*, 568 U.S. 1091, 133 S.Ct. 835, 184 L.Ed.2d 662 (2013) (citation and quotation marks omitted). "We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually

pursued." *Id.*

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Instantly, the PCRA court determined that Appellant failed to establish that he was prejudiced by the prosecutor's comments regarding fentanyl. The record supports the court's conclusion. *See Boyd, supra*. Although the prosecutor made a few comments over concerns that there might be fentanyl in the evidence packets, all the evidence presented at trial and the court's instructions made clear to the jury that fentanyl was not present in this case. Specifically, there was no witness testimony that any of the substances recovered in this case contained fentanyl and the drug analysis lab report confirmed that the substances recovered were heroin and methamphetamine. Additionally, when the evidence packets in question were subsequently opened and published to the jury, Trooper Williams identified the evidence as

heroin and methamphetamines.

The court also instructed the jury that they should not consider the attorneys' statements as evidence. Further, in its initial and final charge to the jury, the court specified that Appellant was charged with possession and PWID of heroin and methamphetamine. On this record, we cannot say that the prosecutor's passing comments about fentanyl confused the jury when all the evidence and the court's instructions provided clarity as to the substances that Appellant was charged with possessing. ***See Spotz, supra***. As such, we agree with the PCRA court that Appellant failed to establish that he was prejudiced by Attorney Clark's failure to object to the prosecutor's comments. ***See Ford, supra***.

The court also found that Appellant was not prejudiced by Attorney Clark's failure to object to Trooper Williams' testimony regarding the empty stamp bags, snorting straw, and butane lighter. In context, Trooper Williams' testimony regarding these items was in response to the prosecutor's question inquiring why he collected these items from the hotel room. In response, Trooper Williams explained why he believed the items had evidentiary value, specifically noting that the stamp bags were indicative of drug sales and the snorting straw and butane lighter were indicative of drug use. Trooper Williams did not otherwise offer any opinion on whether Appellant possessed any of the substances recovered from the room for the purpose of distribution. Corporal Friend, who was qualified as an expert in the field of narcotics

investigation at trial, testified in much further detail about the use of stamp bags in drug transactions. He also opined, based on his specialized knowledge and review of the evidence, that Appellant possessed the narcotics recovered in this case with the intent to distribute. Therefore, even if Attorney Clark had objected to Trooper Williams' testimony, the jury would have heard the same information, in much further detail, from Corporal Friend. **_See Spotz, supra_**.

Further, Appellant testified at trial that he was using heroin and methamphetamine in the hotel room. He also admitted that some of the empty stamp bags were his and agreed that they were drug paraphernalia. As such, Trooper Williams' testimony that the snorting straw and butane lighter were indicative of drug use did not prejudice Appellant as Appellant admitted to possessing and using drugs in the hotel room. On this record, we discern no error in the PCRA court's determination that the outcome of trial would have remained unchanged if Attorney Clark objected to Trooper Williams' testimony regarding the stamp bags, snorting straw and butane lighter. **_See Spotz, supra_**; **_Ford, supra_**.

Regarding the introduction of the drug analysis lab report, Attorney Clark testified that he did not object to the lab report because Appellant's trial strategy did not benefit from challenging the presence of drugs in this case. Rather, Appellant's trial strategy was to admit that he was a drug user and deny that he possessed the drugs with the intention of selling them. The record confirms that Attorney Clark elicited testimony and argued throughout

trial in support of this strategy. Additionally, Appellant confirmed through his own testimony that he was using heroin and methamphetamines in the hotel room. On this record, we agree with the PCRA court that Attorney Clark had a reasonable strategic basis for his actions and Appellant was not otherwise prejudiced by Attorney's Clark's decision not to object to the introduction of the lab report. *See King, supra*; *Ford, supra*.

In his fourth issue, Appellant claims that he wrote a letter to Attorney Clark informing him of his desire to file a petition for allowance of appeal with our Supreme Court. Appellant asserts that he sent this letter within the 30-day window to file the appeal. Appellant concludes that Attorney Clark's failure to file a requested petition for allowance of appeal constitutes *per se* ineffectiveness, and this Court should vacate the PCRA court's order denying his PCRA petition. We disagree.

This Court has explained:

> [I]n presenting a PCRA claim of ineffective assistance of counsel for failing to file a requested petition for allowance of appeal, an appellant need not show that the petition would likely have been granted, but merely that the appeal was requested and counsel failed to act. [*See Commonwealth v. Liebel*, 573 Pa. 375, 383-384, 825 A.2d 630, 635 (2003)]. In these situations, the Supreme Court has effectively held that the prejudice prong of the test for ineffective assistance has been established *per se*. *See id.*
>
> On the other hand, "[b]efore a court will find ineffectiveness of counsel for failing to file a direct appeal, the defendant must prove that he requested an appeal and that counsel disregarded that request." *Commonwealth v. Knighten*, 742 A.2d 679, 682 (Pa.Super. 1999). Clearly, if a request

> to file a direct appeal is necessary to sustain an ineffectiveness claim based upon the failure to file a direct appeal, then such a request is also necessary where the alleged ineffectiveness is the failure to file a petition for allowance of appeal. ***Cf. Commonwealth v. Cooke***, 852 A.2d 340, 344 (Pa.Super. 2004) and ***Commonwealth v. Gadsden***, 832 A.2d 1082, 1088 (Pa.Super. 2003) (directing PCRA court upon remand to determine whether appellant requested that petition for allowance of appeal be filed).

***Commonwealth v. Bath***, 907 A.2d 619, 622 (Pa.Super. 2006), *appeal denied*, 591 Pa. 695, 918 A.2d 741 (2007).

> Where no request has been made, an appellant must establish that a duty to consult was owed. Under ***Roe*** and ***Touw***, an appellant may establish a duty to consult by indicating issues that had any potential merit for further review. ***See Roe*** [***v. Flores-Ortega***, 528 U.S. 470, 480, 120 S.Ct. 1029, 1036, 145 L.Ed.2d 985 (2000); ***Commonwealth v. Touw***, 781 A.2d 1250, 1254 (Pa.Super. 2001)]. This does not require appellant to demonstrate that the Supreme Court would likely grant review to a petition for allowance of appeal, but only that appellant must show that any issue rises above frivolity.

***Bath, supra*** at 623-24.

Here, the PCRA court found that Appellant failed to ask Attorney Clark to file a petition for allowance of appeal on his behalf. ***See Bath, supra***. The court credited Attorney Clark's testimony that he informed Appellant of this Court's disposition on appeal and instructed Appellant to respond within the deadline if he wished to further appeal to our Supreme Court. Attorney Clark further testified that he did not receive a response from Appellant either before or after the deadline to file a petition for allowance of appeal. The court also found Appellant's testimony to be incredible, noting:

> First, despite [Appellant's] assertion that he did communicate his desire to appeal, there is no evidence that mail was sent but lost within the prison mail system (*e.g.*, receipt showing mailing or postage). Second, despite his incarceration, [Appellant's] other written communications successfully arrived at the Superior Court and [the trial court], both before and after the time period in which he allegedly sent his request to Attorney Clark.

(PCRA Court Opinion, filed 8/8/24, at 8). We are bound by the PCRA court's credibility determinations, which are supported by the record. *See Dennis, supra*. Further, Appellant failed to assert any meritorious issues that warranted further review during the direct appeal process to establish that Attorney Clark owed a duty to consult. *See Bath, supra*. As such, we discern no error in the court's conclusion that Appellant failed to establish that Attorney Clark was ineffective in failing to file a petition for allowance of appeal. *See Ford, supra*. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/08/2025

- 19 -